UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Amanda Groettum,

        Plaintiff,

v.

Kohl's Department Stores, Inc. and
Capital One Financial Corporation,

        Defendants.

File No. 19-cv-2505 (ECT/DTS)

**OPINION AND ORDER**

---

Thomas J. Lyons, Jr., Consumer Justice Center P.A., Vadnais Heights, MN, for Plaintiff Amanda Groettum.

Patrick D. Newman, Bassford Remele, Minneapolis, MN, for Defendants Kohl's Department Stores, Inc. and Capital One Financial Corporation.

---

Amanda Groettum isn't dead. Defendants nonetheless reported her death to consumer reporting agencies. Groettum alleges that Defendants' reports of her death prevented her from obtaining credit to procure medical services and a home loan and damaged her in other ways. Groettum asserts a claim under the Fair Credit Reporting Act ("FCRA") and a claim under Minnesota common law for credit defamation. Defendants seek judgment on the pleadings against Groettum's credit defamation claim. Defendants' motion will be granted because the FCRA preempts Groettum's credit defamation claim.

I[1]

Groettum opened a credit card account with Defendants in November 2014. Compl. ¶ 7 [ECF No. 1]. In January 2019, while in the home-buying process, Groettum's mortgage broker told Groettum that she would be unable to qualify for a loan because credit agencies were receiving reports that she was deceased. *Id.* ¶ 9, 11–12. Groettum learned that Defendants Kohl's and Capital One were reporting to the consumer reporting agencies that she was dead. *Id.* ¶ 13. After learning of these reports, Groettum spent more than 11 hours from January through April 2019, disputing the accuracy of their reports of her death with both Kohl's and Capital One. *Id.* ¶ 14–22. When these disputes proved ineffective, Groettum contacted the national credit reporting agencies—Experian Information Solutions Inc., Trans Union LLC, and Equifax Information Services LLC—in May, June, July, and August 2019, to dispute the reports of her death. *Id.* ¶ 23. Groettum suffered adverse consequences because of these reports. She was denied credit for medical care. *Id.* ¶ 25. She was denied loans and mortgage opportunities in her search for a new home. *Id.* ¶ 26. She also suffered mental and emotional distress, causing her to seek weekly therapy. *Id.* ¶ 27. Because Defendants sent correspondence to Groettum after reporting

---

[1] "Judgment on the pleadings is appropriate only when there is no dispute as to any material facts and the moving party is entitled to judgment as a matter of law, the same standard used to address a motion to dismiss for failure to state a claim under Rule 12(b)(6)." *Ashley Cty. v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009) (citations omitted). "The facts alleged in the complaint must be enough to raise a right to relief above the speculative level." *Clemons v. Crawford*, 585 F.3d 1119, 1124 (8th Cir. 2009) (quoting *Drobnak v. Andersen Corp.*, 561 F.3d 778, 783 (8th Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007))) (internal quotation marks omitted). Consistent with this standard, the facts described here are as alleged in Groettum's complaint.

her death—showing they knew she was not dead—Groettum alleges that Defendants' misreporting was malicious. *Id.* ¶¶ 30–31, 40–43.

Groettum asserts two claims arising out of Defendants' misreporting of her death. First, Groettum asserts a claim under the FCRA, alleging Defendants violated 15 U.S.C. § 1681s-2(b) when they received notice from the consumer reporting agencies of the dispute, failed to conduct a reasonable investigation into the dispute, and failed to delete and correct the misinformation being reported. *Id.* ¶ 34. Groettum asserts that this violation of § 1681s-2(b) was willful. *Id.* ¶ 36. She seeks "actual damages, statutory damages, punitive damages and costs and attorney's fees from Defendants." *Id.* ¶ 38. Second, Groettum asserts that Defendants' misreporting of her death constitutes credit defamation under Minnesota law. Defendants argue Groettum's credit defamation claim fails as a matter of law because it is preempted by the FCRA. *See generally* Mem. in Supp. [ECF No. 17].

II

Preemption, "which has its roots in the Supremacy Clause, . . . may be either express or implied, and is compelled whether Congress' command is explicitly stated in the statute's language or implicitly contained in its structure and purpose." *Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 152–53 (1982) (citation and internal quotation marks omitted). The FCRA contains two sections that expressly preempt state-law claims against persons who furnish information to consumer reporting agencies. Section 1681h(e) says that no consumer may bring a defamation, invasion of privacy, or negligence claim against furnishers of information "except as to false information furnished with malice or

willful intent to injure such consumer." 15 U.S.C. § 1681h(e). Thus, unless a consumer can show that "false information [was] furnished with malice or willful intent to injure," § 1681h(e) preempts the consumer's defamation, invasion of privacy, or negligence claim. *Thornton v. Equifax, Inc.*, 619 F.2d 700, 704 (8th Cir. 1980). The second preemption provision, § 1681t(b)(1)(F), was added to the FCRA after § 1681h(e) and sweeps more broadly. Section 1681t(b)(1)(F) provides that "[n]o requirement or prohibition may be imposed under the laws of any State with respect to any subject matter regulated under . . . section 1681s-2 of this title, relating to the responsibilities of persons who furnish information to consumer reporting agencies[.]" 15 U.S.C. § 1681t(b)(1)(F).

Section 1681s-2 requires and prohibits certain things when it comes to furnishing information to consumer reporting agencies. Among those, and particularly relevant here, furnishers—that is, persons who provide information to consumer reporting agencies—are prohibited from furnishing information that they know or have reasonable cause to believe is inaccurate to consumer reporting agencies and have a duty to correct and update information they determine is not complete or accurate. *See* 15 U.S.C. § 1681s-2(a)(1)(A), (a)(2). After receiving notice of a dispute regarding the completeness or accuracy of any furnished information, furnishers must investigate the dispute and report the results of the investigation to the consumer reporting agencies. 15 U.S.C. § 1681s-2(b). If the investigation determines that the information previously furnished was inaccurate, incomplete, or unverifiable, a furnisher must modify the information in the report, delete the information, or permanently block the reporting of that information. 15 U.S.C. § 1681s-2(b)(1)(E).

The conduct Groettum alleges constitutes defamation is regulated under 15 U.S.C. § 1681s-2. Under Minnesota law, "[t]he elements of defamation require the plaintiff to prove that a statement was false, that it was communicated to someone besides the plaintiff, and that it tended to harm the plaintiff's reputation and to lower [her] in the estimation of the community." *Rouse v. Dunkley & Bennett, P.A.*, 520 N.W.2d 406, 410 (Minn. 1994). Here, Groettum alleges Defendants defamed her by falsely "report[ing] to the credit reporting agencies that [she] is deceased . . . and harm[ing] [her] reputation and lower[ing] her in the estimation of the community[.]" Compl. ¶¶ 40, 42. The identity of alleged conduct between Groettum's defamation and FCRA claims seems clear: Groettum alleges Defendants furnished false information to the credit reporting agencies, and § 1681s-2 regulates the furnishing of information to credit reporting agencies. The plain text of § 1681t(b)(1)(F), then, preempts Groettum's credit defamation claim. 15 U.S.C. § 1681t(b)(1)(F) ("No requirement or prohibition may be imposed under the laws of any State with respect to any subject matter regulated under . . . section 1681s-2 of this title[.]").

Groettum argues that to read the plain text of § 1681t(b)(1)(F) to preempt her credit defamation claim would effectively nullify § 1681h(e), however, and to avoid such a result § 1681t(b)(1)(F) should be understood instead to preempt only those state-law claims that are based on conduct occurring after the furnisher has been notified of the dispute. See Mem. in Opp'n at 9–13 [ECF No. 24]. In other words, if a plaintiff asserts claims that arose before the plaintiff lodged a dispute with the consumer reporting agency, in Groettum's view, § 1681h(e) would be the relevant preemption provision, and if any claims

arose out of conduct occurring after the plaintiff lodged the dispute, § 1681t(b)(1)(F) would control. This so-called "temporal approach" attempts to ease the apparent conflict or tension between § 1681h(e) and § 1681t(b)(1)(F).

The primary problem with the temporal approach is its premise; § 1681h(e) and § 1681t(b)(1)(F) are not in conflict. In the absence of binding authority from the Supreme Court or Eighth Circuit on this issue, the Seventh Circuit's analysis in *Purcell v. Bank of America*, 659 F.3d 622 (7th Cir. 2011) is persuasive. *Purcell* reasoned that the two sections are compatible, not conflicting, because "[s]ection 1681h(e) does not create a *right* to recover for willfully false reports; it just says that a particular paragraph does not preempt claims of that stripe." *Purcell*, 659 F.3d at 625. Because § 1681h(e) does not grant a right to pursue state-law claims based on willfully false reports, § 1681t(b)(1)(F)'s preemption of those kinds of claims does not conflict with § 1681h(e). Put another way, both § 1681h(e) and § 1681t(b)(1)(F) are rights-stripping statutes. Section 1681h(e) does not provide a consumer a right of action for willful defamation that § 1681t(b)(1)(F) then preempts. Instead, "[s]ection 1681h(e) preempts some state claims that could arise out of reports to credit agencies; § 1681t(b)(1)(F) preempts more of these claims." *Id.* The Seventh Circuit also was careful to note:

> [The] point is not that § 1681t(b)(1)(F) repeals § 1681h(e) by implication. It is that the statutes are compatible: the first-enacted statute [§ 1681h(e)] preempts some state regulation of reports to credit agencies, and the second-enacted statute [§ 1681t(b)(1)(F)] preempts more. There is no more conflict between these laws than there would be between a 1970 statute setting a speed limit of 60 for all roads in national parks and a 1996 statute setting a speed limit of 55. It is easy to comply with both: don't drive more than 55 miles per hour. Just as the

6

> later statute lowers the speed limit without repealing the first (which means that, if the second statute should be repealed, the speed limit would rise to 60 rather than vanishing), so § 1681t(b)(1)(F) reduces the scope of state regulation without repealing any other law. This understanding does not vitiate the final words of § 1681h(e), because there are exceptions to § 1681t(b)(1)(F). When it drops out, § 1681h(e) remains.

*Id.*

Most cases Groettum cites to support the temporal approach—including the three she cites from this district—were decided by district courts before any circuits had weighed in on the issue. *See* Mem. in Opp'n at 10 (citing *Yutesler v. Sears Roebuck & Co.*, 263 F. Supp. 2d 1209 (D. Minn. 2003); *Malm v. Household Bank (SB), N.A.*, No. 03-cv-4340 (ADM/AJB), 2004 WL 1559370 (D. Minn. July 7, 2004); *Mattice v. Equifax*, No. 03-cv-1060 (RHK/JSM), 2003 WL 21391679 (D. Minn. June 13, 2003)). In the years following these decisions, three circuits have held unanimously and persuasively that "the FCRA's preemption provisions are not in conflict," and that the temporal approach is therefore unnecessary to ease the asserted conflict between the statutes. *Scott v. First S. Nat'l Bank*, 936 F.3d 509, 521 (6th Cir. 2019); *see Macpherson v. JPMorgan Chase Bank, N.A.*, 665 F.3d 45, 47–48 (2d Cir. 2011); *Purcell v. Bank of Am.*, 659 F.3d at 625. These developments have prompted reexamination of earlier decisions. *Compare Olson v. Wells Fargo Bank, N.A.*, No. 13-cv-780 (DWF/JJK), 2015 WL 4661984 at *15 (D. Minn. Aug. 5, 2015), *with Yutesler*, 263 F. Supp. 2d at 1210–12. To adopt the "temporal approach" to § 1681t(b)(1)(F) and § 1681h(e) would ignore the plain text of § 1681t(b)(1)(F) to ameliorate a conflict that does not exist between the two statutes.

## ORDER

Therefore, based on all the files, records, and proceedings herein, **IT IS ORDERED THAT**:

1. Defendants' motion for partial judgment on the pleadings [ECF No. 15] is **GRANTED**; and

2. Plaintiff's credit defamation claim (Count II) is **DISMISSED WITH PREJUDICE**.

Date: February 18, 2020

s/ Eric C. Tostrud
Eric C. Tostrud
United States District Court